# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30675

United States Court of Appeals
Fifth Circuit

**FILED**
August 29, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

   Plaintiff - Appellee

v.

BOBBIE LONDON, JR.,

   Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before JOLLY, COSTA, and ENGELHARDT, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Bobbie London, Jr. is a career offender, serving 327 months for various drug offenses. He appeals the district court's order denying as untimely his 28 U.S.C. § 2255 motion to correct his 1996 sentence. London contends that the residual clause of the pre-*Booker*[1] Sentencing Guideline's career offender provision,[2] under which he was sentenced, is unconstitutionally vague because

---

[1] *See United States v. Booker*, 543 U.S. 220 (2005).

[2] Under the Sentencing Guidelines in place at the time, a defendant was a career offender if:

 (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of

No. 17-30675

its language is the same as the residual clause of the Armed Career Criminal Act (ACCA) declared unconstitutional in *Johnson v. United States*, 135 S.Ct. 2551 (2015). The precise question before us is whether London's § 2255 motion is timely. To answer that question, however, we must determine whether London asserts the right newly recognized in *Johnson*, making his motion timely, or whether his § 2255 motion asserts a right not yet recognized by the Supreme Court, rendering his motion untimely. We hold that the right he claims and asserts is not the right recognized in *Johnson*. We therefore affirm the district court's dismissal of his § 2255 motion as not entitled to a new statute of limitations and thus time barred.

## I.

## A.

In July 1996, Bobbie London pled guilty to five violations of the Federal Controlled Substances Act, 21 U.S.C. §§ 841(a)(1) & 846. The court sentenced London as a "career offender," which applies when, *inter alia*, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.1 (U.S. Sentencing Comm'n 1995). At the time, *i.e.*, pre-*Booker*, the Sentencing Guidelines defined a crime of violence in three clauses: an elements clause, an enumerated offenses clause, and a residual clause.[3] *Id.* § 4B1.2(1).

---

violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S. Sentencing Guidelines Manual § 4B1.1 (U.S. Sentencing Comm'n 1995).

[3] The elements clause defined a "crime of violence" as "any offense under federal or state law punishable by imprisonment for a term exceeding one year that -- has as an element the use, attempted use, or threated use of physical force against the person of another." U.S.S.G. § 4B1.2(1)(i). The enumerated offenses clause added the following specific offenses: "burglary of a dwelling, arson, or extortion, involves use of explosives." *Id.* § 4B1.2(1)(ii).

2

No. 17-30675

Our concern today is with the provision's residual clause, which defined a "crime of violence" as "any offense under federal or state law punishable by imprisonment for a term exceeding one year that . . . otherwise involves conduct that presents a serious potential risk of physical injury to another."[4] *Id.* § 4B1.2(1)(ii).

London had previously been convicted in Louisiana state court for illegal use of a weapon and distribution of cocaine. At his sentencing for his federal crimes, the district judge applied the career offender enhancement and calculated London's guideline range for imprisonment to be 262 to 327 months. He was thus sentenced, in 1996, to 327 months on each count, to be served concurrently, a sentence he is presently serving.

B.

After London's sentence became final, the Supreme Court decided two cases that lay the foundation for this appeal. First, in *United States v. Booker*, the Supreme Court held that the Sentencing Guidelines—under which London was sentenced—if considered "mandatory and binding on all judges," violated the Sixth Amendment by confecting sentences based on facts not established by a plea of guilty or jury verdict. 543 U.S. at 233, 244 (majority opinion of

---

[4] In 1997, § 4B1.2(1)(i)–(ii) was stylistically amended to § 4B1.2(a)(1)–(2). U.S.S.G. app. C amendment 568 (effective November 1, 1997). In 2016, the Guidelines were amended to strike the residual clause. In full, it now reads:

(a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that--

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a) (2016).

Stevens, J.). To remedy this constitutional violation, the Supreme Court severed "the provision of the federal sentencing statute that makes the Guidelines mandatory . . . mak[ing] the Guidelines effectively advisory." *Id.* at 245 (majority opinion of Breyer, J.).

Second, in *Johnson*, the Supreme Court recognized a new rule of constitutional law, holding that the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague. 135 S.Ct. at 2557–58, 2563. The residual clause in the ACCA defined "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that . . . otherwise involves conduct that presents a serious potential risk of physical injury to another."[5] 18 U.S.C. § 924(e)(2)(B)(ii). The Supreme Court determined that the residual clause was unconstitutionally vague, denying due process of law in violation of the Fifth Amendment, because it "both denies fair notice to defendants and invites arbitrary enforcement by judges." *Johnson*, 135 S.Ct. at 2557. The Court identified "[t]wo features of the residual clause [that] conspire to make it unconstitutionally vague." *Id.* It "leaves grave uncertainty about how to estimate the risk posed by a crime" while, at the same time, "leav[ing]

---

[5] In full, the statute's violent felony definition provides:

[T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B)(ii).

uncertainty about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 2257–58. *Johnson* was made retroactive in *Welch v. United States*, 136 S.Ct. 1257 (2016).

The Supreme Court's decision in *Beckles v. United States* also merits our attention. 137 S.Ct. 886 (2017). In *Beckles*, the Supreme Court considered a vagueness challenge to the residual clause of U.S.S.G. § 4B1.2 in the post-*Booker* Guidelines. *Id.* at 890. The Court determined that, because the post-*Booker* Guidelines "merely guide the district courts' discretion, the Guidelines are not amenable to a vagueness challenge." *Id.* at 894. Prior to the creation of the Sentencing Guidelines regime, the Court explained, judges had virtually unfettered discretion at sentencing. Since that purely discretionary system was not unconstitutionally vague, it necessarily followed that neither was the Guidelines scheme of "guided discretion" unconstitutionally vague. *Id.*

Furthermore, according to the Court, the post-*Booker* Guidelines "do not implicate the twin concerns underlying vagueness doctrine—providing notice and preventing arbitrary enforcement." *Id.* "As to notice, even perfectly clear Guidelines could not provide notice to a person who seeks to regulate his conduct so as to avoid particular penalties within the statutory range" because "the sentencing court retains discretion to impose [an] enhanced sentence." *Id.* And, as to preventing arbitrary enforcement, the post-*Booker* Guidelines do not leave judges "free to decide, without any legally fixed standards . . . the sentences or sentencing range available." *Id.* at 894–95 (quoting *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–03 (1966)). Instead, "court[s] rel[y] on the career-offender Guideline merely for advice in exercising its discretion to choose a sentence within [the] statutory limits." *Id.* at 895.

## C.

In June 2016, within the one-year statute of limitations from the date of the *Johnson* decision, London filed a 28 U.S.C. § 2255 motion seeking to correct

No. 17-30675

his 1996 sentence. He argued that this new limitation period included his claim; that is to say, *Johnson*'s invalidation of the residual clause of the ACCA applied to negate the identically worded residual clause in the pre-*Booker* career offender Guideline provision under which he was sentenced. It followed, according to London, that his § 2255 motion was timely and his 1996 sentence must be vacated.

The district court did not agree and denied London's motion as untimely. The court held that London did not assert a right newly recognized in *Johnson*; instead, he sought to *extend Johnson* to the residual clause in the pre-*Booker* Sentencing Guidelines and, consequently, the limitation period had not been reset. Because the district court denied London's motion on timeliness grounds, it did not expressly address the merits of London's 28 U.S.C. § 2255 motion. London has timely appealed.[6]

## II.

On appeal, London argues again that the right he "asserted" is a right "initially recognized" in *Johnson* and thus his motion is timely because it was filed within one-year after *Johnson* was decided. London characterizes the right recognized in *Johnson* as the "due process right not to have his sentence fixed by the unconstitutionally vague language of the residual clause." The government argues that the right recognized in *Johnson* is significantly narrower: it is only the right not to be sentenced under the residual clause in the ACCA.[7]

---

[6] London's motion for a certificate of appealability ("COA") was initially denied by a single-judge order. On rehearing, a three-judge panel issued a COA.

[7] Because we decide this case on timeliness grounds, we need not discuss London's argument on the merits of his 28 U.S.C. § 2255 motion.

No. 17-30675

III.

We review "the district court's factual findings relating to a § 2255 motion for clear error and its conclusions of law *de novo.*" *United States v. Morgan*, 845 F.3d 664, 666 (5th Cir. 2017) (quoting *United States v. Olvera*, 775 F.3d 726, 728–29 (5th Cir. 2015)). London challenges the district court's legal conclusion, that is, that London's motion to correct his sentence is untimely, and consequently our review is de novo.

IV.

A.

It is undisputed that the Supreme Court, in *Johnson*, recognized a new rule of constitutional law. *See Welch*, 136 S.Ct. at 1264. The question posed by this appeal is whether London's motion asserts the same right "initially recognized by the Supreme Court" in *Johnson*, thus rendering his motion timely under the one-year limitations period of § 2255(f)(3) applicable to newly recognized rights.[8] Our review is limited in deciding this question. We are not specifically called upon to consider the merits of London's constitutional claim. To be sure, § 2255(f)(3) instructs us to decide only the contours of the right the *Supreme Court* recognized in *Johnson*.

Nevertheless, to determine whether the Supreme Court initially recognized the asserted right, and thus whether the § 2255(f)(3) clock has been reset, we apply the same analysis used to determine if a case announces a "new

---

[8] Section 2255(f)(3) reads:

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of--

. . .

    (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

7

rule" that may be asserted retroactively on collateral review. *Morgan*, 845 F.3d at 667–68; *see Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality opinion of Connor, J.); *see also Russo v. United States*, 902 F.3d 880, 882 (8th Cir. 2018) ("[T]he inquiry into whether a right is 'newly recognized' under § 2255(f)(3) tracks the analysis used to determine 'whether the Supreme Court announced a "new rule" within the meaning of the Court's jurisprudence governing retroactivity for cases on collateral review.'" (quoting *Headbird v. United States*, 813 F.3d 1092, 1095 (8th Cir. 2016))).  As stated in *Teague*, "a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. . . . To put it differently, a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final."  489 U.S. at 301.  "Dictated by precedent means that '*no other* interpretation was reasonable.'"  *Morgan*, 845 F.3d at 667 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 538 (1997)).[9]

The right that London asserts is that a sentence determined by the vague language of the residual clause in U.S.S.G. § 4B1.2 pre-*Booker* violates constitutional due process.  This asserted right, we think, is not *dictated* by *Johnson*; London's assertion is more properly described as a "new right" to the extent that it is a right that has not yet been recognized by the Supreme Court.  The Supreme Court has yet to decide whether a vagueness challenge can be raised under the pre-*Booker* Sentencing Guidelines.  Instead, the Court's decisions up until this point evince a distinction between statutes that fix

---

[9] We follow the approach for assessing timeliness under § 2255(f)(3) as set out in *Morgan*.  In *United States v. Williams*, however, we held that, to trigger the time extension of § 2255(f)(3), the challenged statute "must actually have first been invalidated" by the Supreme Court.  897 F.3d 660, 662 (5th Cir. 2018).  Our opinion today, drawing on the *Morgan* analysis, holds that the one-year extension applies when the decision of the Supreme Court "dictates," *i.e.*, leaves no room for any other view, the invalidity of the challenged statute.  Although the outcome we reach today would be the same under *Williams*, we nevertheless apply *Morgan*, a decision that pre-dates *Williams*.

sentences and Guidelines that attempt to constrain the discretion of sentencing judges.[10]

Let us be more specific. *Johnson* decided a challenge to the residual clause in the ACCA—a *statute*—which imposed a mandatory minimum sentence of fifteen years and up to a maximum of life for defendants who had three previous convictions for a "violent felony." *Johnson*, 135 S.Ct. at 2555 (quoting 18 U.S.C. § 924(e)(1)). Unlike the ACCA, the "career offender" designation in the pre-*Booker* Guidelines did not increase the statutory minimum or maximum penalty a defendant faced. The Guidelines only cabined a judge's discretion in choosing a sentence within the statutory range. This point is evident in London's own sentencing, at which he faced a statutory minimum sentence of ten years and a statutory maximum sentence of life imprisonment. The pre-*Booker* Guidelines did not statutorily increase the risk London faced at sentencing; the statutory minimum and maximum sentence he faced remain the same. Instead, the career offender designation only directed the discretion of the district judge within the statutory range—*i.e.*, ten years to life—to a sentence of 262 to 327 months. That is distinguishable from *Johnson*, where applying the residual clause had the effect of increasing the punishment faced by the defendant by raising the statutory minimum and maximum sentences. 135 S.Ct. at 2555.

That *Johnson* does not dictate the right urged by London is further supported by *Beckles*, in which the Supreme Court emphasized the distinction between statutes that "fix the permissible range of sentences" and advisory Guidelines that "guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." 137 S.Ct. at 892. In *Beckles*,

---

[10] In fact, one court of appeals has held that pre-*Booker* Guidelines are not susceptible to vagueness challenges. *In re Griffin*, 823 F.3d 1350, 1354–55 (11th Cir. 2016).

the Court narrowly held that the latter do.  The Court did not indicate, however, whether this is true with respect to the pre-*Booker* Guidelines as well. As indeed Justice Sotomayor observed, the Supreme Court has "le[ft] open the question whether defendants sentenced to terms of imprisonment before [its] decision in *United States v. Booker* . . .—that is, during the period in which the Guidelines did 'fix the permissible range of sentences'—may mount vagueness attacks on their sentences."  *Id.* at 903 n.4 (Sotomayor, J., concurring in judgment) (quoting *id.* at 892.)

### B.

Our holding that London's motion is thus untimely accords with the decision of six courts of appeals that have already addressed this same issue. *See United States v. Blackstone*, 903 F.3d 1020 (9th Cir. 2018), *cert. denied*, No. 18–9368, 2019 WL 2211790 (U.S. June 24, 2019); *Russo v. United States*, 902 F.3d 880 (8th Cir. 2018), *cert. denied* 139 S.Ct. 1297 (2019); *United States v. Green*, 898 F.3d 315 (3d Cir. 2018), *cert. denied* 898 F.3d 315 (2019); *United States v. Greer*, 881 F.3d 1241 (10th Cir.), *cert. denied*, 139 S.Ct. 14 (2018);[11] *Raybon v. United States*, 867 F.3d 625 (6th Cir. 2017), *cert. denied* 138 S.Ct. 2661 (2018); *United States v. Brown*, 868 F.3d 297 (4th Cir. 2017), *cert. denied*, 139 S.Ct. 14 (2018).  Only one circuit has found that challenges to the residual clause in the pre-*Booker* Guidelines assert the new right recognized in *Johnson*, and thus the claims not time barred.[12]  *See Cross v. United States*,

---

[11] London posits that the Tenth Circuit is reconsidering its decision in *Greer* because panel rehearing was granted on an order issuing a summary affirmance based on *Greer*.  *See United States v. Ward*, 718 F. App'x 757 (10th Cir. Apr. 11, 2018) (per curiam), *reh'g granted* (Aug. 6, 2018).  More recently, however, the Tenth Circuit has reaffirmed *Greer*.  *See United States v. Pullen*, 913 F.3d 1270, 1284 n.17 (10th Cir. 2019) ("[I]t is clear *Greer*'s holding, that *Johnson* does not create a new rule of constitutional law applicable to the mandatory Guidelines, remains good law.").

[12] The First Circuit has only addressed this issue under the lower standard of 28 U.S.C. § 2244(b)(3)(C), concluding that the petitioner had made the prima facie showing

892 F.3d 288 (7th Cir. 2018).  The Seventh Circuit found that the petitioner had "asserted" a right that reset the § 2255(f)(3) clock by only "claim[ing] the benefit of a right that the Supreme Court has recently recognized."[13]  *Id.* at 294.

London asks that we adopt this meaning of "asserted."  We decline to do so.  First, the Seventh Circuit's interpretation of "asserted" is inconsistent with the "dictated by precedent" test set forth in *Morgan*.  Moreover, it is incompatible with the plain text of § 2255(f)(3).  *See Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013) ("When the language is plain, we 'must enforce the statute's plain meaning, unless absurd.'" (quoting *In re Nowlin*, 576 F.3d 258, 261–62 (5th Cir. 2009))).  London's motion is timely only if, in the words of the statute, "the right asserted was initially *recognized*" in *Johnson*.  28 U.S.C. § 2255(f)(3) (emphasis added).   Thus, the text of the statute narrows the rights which may be asserted, which in turn requires us to determine whether the right asserted by London is the right recognized by the Supreme Court in *Johnson*.  Other circuits agree and also reject the Seventh Circuit's reading of the statute.  *See Blackstone*, 903 F.3d at 1027 ("We disagree with the interpretation of the Seventh Circuit. The right that a movant asserts must be 'initially recognized by the Supreme Court.'" (quoting 28 U.S.C. § 2255(f)(3))); *Green*, 898 F.3d at 322 ("We are not persuaded by the [Seventh Circuit's] brief analysis on this issue, which effectively reads 'recognized' out of 28 U.S.C. § 2255(f)(3) by not engaging in an inquiry into

---

necessary for certification of a successive habeas application. *See Moore v. United States*, 871 F.3d 72, 85 (1st Cir. 2017).

[13] After finding that the petitioners' motions were timely, the Seventh Circuit invalidated their sentences, holding that the pre-*Booker* version of U.S.S.G. § 4B1.1 suffered from the same vagueness problems as ACCA's residual clause, the pre-*Booker* Guidelines were subject to vagueness challenges, and *Johnson* applied retroactively to the pre-*Booker* Guidelines residual clause.  *Cross*, 892 F.3d at 299–307.

No. 17-30675

whether the right asserted by the petitioner is the same right that was recognized by the Supreme Court."). In short, it is debatable whether the right recognized in *Johnson* applies to the pre-*Booker* Sentencing Guidelines—an administrative regime that governs a judge's discretion to a range within the statutory minimum and maximum sentences. Consequently, London does not assert a right dictated by *Johnson* but instead asserts a right that would extend, as opposed to apply, *Johnson* to the pre-*Booker* Guidelines. His claim is therefore not entitled to the benefit of a new statute of limitations.

V.

To sum up: London's 28 U.S.C. § 2255 motion is untimely because he has failed to assert a right recognized in *Johnson*. The judgment of the district court is therefore

AFFIRMED.

No. 17-30675

GREGG COSTA, Circuit Judge, concurring in the judgment:

Our caselaw requires treating London's section 2255 motion as untimely. *See United States v. Williams*, 897 F.3d 660, 662 (5th Cir. 2018). *Williams* denied a certificate of appealability to a prisoner in a situation like London's. That prisoner asserted that *Johnson*'s invalidation of one clause of the Armed Career Criminal Act's definition of "violent felony" (18 U.S.C. § 924(e)(2)(B)(ii)) required invalidating similar language defining "crime of violence" in the same statute (*id.* § 924(c)(3)(B)). *Williams*, 897 F.3d at 662. Because the Supreme Court had not yet decided that the latter was also vague—it soon would, *see United States v. Davis*, 139 S. Ct. 2319 (2019)—we concluded that the prisoner was not relying on a right recognized by the Supreme Court that would restart the one-year clock for seeking postconviction relief. *Williams*, 897 F.3d at 662. London seeks a bigger leap, asking us to apply *Johnson* not to a statute but to a Sentencing Guideline. So under *Williams*, it is not enough for London that he is asserting the right to be free from vague sentencing provisions that the Supreme Court recognized in *Johnson*. In this circuit, the habeas clock restarts only if the Supreme Court has addressed the exact application of *Johnson* that would grant the prisoner relief. *Id.* (stating that the challenged statute "must actually have first been invalidated" for section 2255(f)(3) to apply). I would affirm on that procedural ground without reaching the difficult constitutional question whether a mandatory Guideline can be challenged on vagueness grounds.[1]  *See Slack v. McDaniel*, 529 U.S. 473, 485 (2000)

---

[1] The remedy for such a violation, if one exists, is unclear. Applying the career offender enhancement that uses the vague *Johnson* language does not violate due process when the Guideline is advisory. *Beckles v. United States*, 137 S. Ct. 886 (2017). If a mandatory Guideline using that language is unconstitutional, there seem to be two possible remedies: 1) eliminate the vague career offender enhancement from the Guidelines calculation used at the resentencing, or 2) keep the enhancement, but treat the resulting range as an advisory one from which the resentencing court may vary. Under the former, a

(encouraging courts to "first resolve procedural issues" before answering constitutional questions).

But I write separately because we are on the wrong side of a split over the habeas limitations statute. Our approach fails to apply the plain language of the statute and undermines the prompt presentation of habeas claims the statute promotes.

Although this limitations issue affects more than the *Johnson* line of cases, litigation resulting from that case has highlighted the differing interpretations of this gateway provision. So a brief history of *Johnson* is helpful. It was a landmark decision. For the first time, the Supreme Court held that a sentencing provision was void for vagueness. *Johnson v. United States*, 135 S. Ct. 2551, 2577 (2015) (Alito, J. dissenting) (suggesting that prior to *Johnson* "[d]ue process [did] not require . . . that a 'prospective criminal' be able to calculate the precise penalty that a conviction would bring"). In the four years since *Johnson* was decided, the Supreme Court has applied it to hold that two other laws violate due process. *Davis*, 139 S. Ct. at 2319; *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).

*Johnson* did not just generate several substantive questions about the vagueness doctrine in the sentencing context, it also spawned difficult procedural questions. The Supreme Court soon answered one of the big ones, holding that *Johnson* applies retroactively to cases on collateral review. *Welch v. United States*, 136 S. Ct. 1257 (2016). But retroactivity is not the only obstacle for a federal prisoner whose conviction became final before a change in the law that might help him. There is a statute of limitations for motions seeking postconviction relief. Ordinarily it is one year from the date the

---

career offender sentenced under the mandatory regime ends up better off than a career offender like Beckles who was sentenced under an advisory range.

conviction becomes final, but a petition is also timely if it is filed within a year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). There is also a bar to filing multiple section 2255 petitions, though that can be overcome if a court of appeals certifies that a successive petition "contain[s] a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255(h)(2). The statutory rules on timeliness and successive petitions thus both provide avenues for prisoners to assert rights that apply retroactively. Yet courts have struggled with these provisions when it comes to prisoners invoking *Johnson* to challenge laws with similar language to the statute the Supreme Court addressed. *Compare Cross v. United States*, 892 F.3d 288, 293–94 (7th Cir. 2018) (restarting the clock when the prisoner asserted that *Johnson* invalidated other laws using the same or similar vague language), *with Raybon v. United States*, 867 F.3d 625, 630 (6th Cir. 2017) (not restarting the clock after *Johnson* because the prisoner challenged a provision other than the one *Johnson* addressed); *see also In re Arnick*, 826 F.3d 787, 789–90 (5th Cir. 2016) (Elrod, J. dissenting) (recognizing that the opinion created a circuit split as to what a prisoner must show in order to "rel[y] on" the *Johnson* right under 28 U.S.C. § 2255(h)(2)).

This case raises the timeliness issue. The question is thus whether London's petition asserts a "right . . . newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). It does. The petition asserted the right to be free from vague laws "fixing sentences" that *Johnson* recognized. *Johnson*, 135 S. Ct. at 2557. And the *Johnson* right applies retroactively. *Welch*, 136 S. Ct. at 1268. So under

the habeas statute's plain language, the petition was timely. *See Cross*, 892 F.3d at 294; *cf. Moore v. United States*, 871 F.3d 72, 82 (1st Cir. 2017) (suggesting in the successive petition context that *Johnson* reset the clock for vagueness challenges to the Sentencing Guideline challenged in this case).

But as mentioned at the outset, our circuit and most others addressing the issue require more than the statute does. Restarting the clock only when the Supreme Court has vindicated the prisoner's exact claim transforms a threshold timeliness inquiry into a merits one. The language the district court used in rejecting London's petition as untimely shows how our approach improperly imports the merits. It concluded that "[t]here is no right 'newly recognized by the Supreme Court' that entitles Petitioner to relief." **ROA.103**. But section 2255(f)(3) "does not say that the movant must ultimately *prove* that the right applies to his situation." *Cross,* 892 F.3d at 294; *see also United States v. Snyder*, 871 F.3d 1122, 1126 (10th Cir. 2017) ("Whether or not [the petitioner] can ultimately prevail on his motion, he *asserts* the right established in *Johnson*, to be free from a sentence purportedly authorized by the unconstitutionally vague residual clause."); *cf. Arnick*, 826 F.3d at 789 (Elrod, J., dissenting) (explaining that to obtain permission to file a successive section 2255 motion, a petitioner need only show that his petition "'relies on' *Johnson*," not that he will prevail on the claim). Indeed, litigants *assert* rights, but are unsuccessful in doing so, just about every day in this circuit. We have improperly read a success requirement into a statute that requires only the assertion of a right.

The success requirement is at odds not just with the word "asserts," but also with the plain meaning of "right." Instead of looking to see only if the petition asserts a right recognized by the Supreme Court within the past year, we also look at whether the Supreme Court has already applied that right to

16

the provision the prisoner challenges. *Williams*, 897 F.3d at 662. In other words, we require a holding when the statute requires only Supreme Court recognition of the right. *Moore*, 871 F.3d at 82 (distinguishing "rule" and "right" from "holding" and noting that Congress's use of the former "recognizes that the Supreme Court guides the lower courts not just with technical holdings but with general rules that are logically inherent in those holdings"). That "initially" modifies "recognized" in section 2255(f)(3) reinforces that it is the Supreme Court decision first recognizing the right, not a later opinion applying the same right, that restarts the clock. That adverb would be redundant if each "right" the Supreme Court recognized were a one-and-done proposition, extending no further than the precise circumstances of the decision.

An example from another area of criminal law shows how we have mistaken the application of the *Johnson* right for the right itself. *Crawford v. Washington*, 541 U.S. 36 (2004), would also sit near the top of a list of the most important criminal law decisions from the Supreme Court in this still-young century. It changed the standard for Confrontation Clause claims. *Murillo v. Frank*, 402 F.3d 786, 790 (7th Cir. 2005) (noting that *Crawford* "jettisoned" the previous standard). And like *Johnson*, it led to several follow-up Supreme Court cases applying its new standard to various situations.[2] Among other things, the Court has addressed *Crawford*'s application to a drug lab report, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); a blood-alcohol analysis report, *Bullcoming v. New Mexico*, 564 U.S. 647 (2011); expert testimony about a DNA profile, *Williams v. Illinois*, 567 U.S. 50 (2012); and the statements of a

---

[2] *Crawford* does not apply retroactively, so it was not a source of much postconviction litigation. *Whorton v. Bockting*, 549 U.S. 406, 409 (2007). It is still useful to show the plain meaning of "right."

three-year-old domestic abuse victim to his preschool teacher, *Ohio v. Clark*, 135 S. Ct. 2173 (2015). But a lawyer or judge would not now speak of a "*Bullcoming* right" or a "*Melendez-Diaz* claim." It is still the *Crawford* right, or a *Crawford* claim, in whatever new context it arises.

The same is true of *Johnson*. It recognized the general right to be sentenced under provisions that provide sufficient notice; *Dimaya* and *Davis* have just applied that right to different laws. *See Davis*, 139 S. Ct. at 2334 (noting that *Johnson* "identified [the] constitutional problems" posed by the language in 18 U.S.C. § 924(c)(3)(B)); *Dimaya*, 138 S. Ct. at 1213 (invalidating the aggravated felony definition in 18 U.S.C. § 16(b), used in sentencing statutes, as a "straightforward application" of *Johnson*).

London analogizes to another area of law that distinguishes between a right and its application. He notes that courts have long had to make this distinction in applying the retroactivity analysis of *Teague v. Lane*, 489 U.S. 288 (1989). A new rule under *Teague* is one that "breaks new ground or imposes a new obligation" on the government. *Id*. at 301. A decision that is "merely an application of the principle" announced in earlier Supreme Court decisions is not a new rule. *Id*. at 307 (quoting *Yates v. Aiken*, 484 U.S. 211, 216 (1988)). It makes sense that the section 2255 limitation provision, which recognizes an avenue to pursue retroactively applicable claims, would make a similar distinction. Instead of accepting that symmetry between the statute and retroactivity caselaw, our reading of section 2255(f)(3) risks treating each application of *Johnson* as a new rule.[3]

---

[3] As the majority notes, we have recognized a role for *Teague* in the section 2255(f)(3) analysis. *See United States v. Morgan*, 845 F.3d 664 (5th Cir. 2017). *Morgan* relied on *Teague* to conclude that a Supreme Court case the petitioner was relying on to restart the clock (*Descamps v. United States*) did not establish a new rule or right because it only refined the existing modified categorical approach. *Id*. at 667–68 (holding that "*Descamps* clearly relied on existing precedent"). *Morgan* correctly focused on whether the recent Supreme Court case

No. 17-30675

Requiring an application of the right to the prisoner's circumstances delays the presentation of habeas claims. It means that a prisoner seeking to apply a newly recognized right to his similar-but-not-identical claim cannot file within a year of the Supreme Court decision; he must await a future decision applying it to his exact situation. That is at odds with the goal of limitations provisions—"to encourage plaintiffs to pursue diligent prosecution of known claims." *Cal. Pub. Emps. Ret. Sys. v. ANZ Sec., Inc.*, 137 S. Ct. 2042, 2049 (2017) (quotation omitted). As one district court has noted, section 2255(f) aims to "eliminate delays in the federal habeas review process, not to create them." *United States v. Meza*, 2018 WL 2048899, at *5 (D. Mont. May 2, 2018) (citation and quotation omitted). What is more, the Supreme Court often will never address a particular application of one of its decisions; that job is left largely to the lower courts. And for the *Johnson* claim London asserts, there is a unique impediment to Supreme Court review. Because it asks whether *Johnson* applies to the now-abandoned mandatory Guidelines, a cramped reading of the limitations provision prevents the only litigants affected by this

---

the prisoner relied on announced a new right or merely applied previously recognized rights. *Id.* The majority uses *Teague* in a different way: not to ask whether the Supreme Court case on which the prisoner relies recognized a new right, but to ask whether the application the prisoner seeks would qualify as a "new rule." Because the statute only requires that the petitioner assert a right "newly recognized by the Supreme Court," the proper inquiry is to focus as *Morgan* did on whether the Supreme Court decision announced a new rule. By all accounts, *Johnson* did. *See Welch*, 136 S. Ct. at 1257. That is what section 2255(f)(3) requires. As discussed above, whether London is ultimately able to show that *Johnson* affords him relief is a different question than whether he is asserting a new right within the meaning of the limitations statute.

I thus do not think that *Morgan* renders London's claim untimely. Instead it supports the view that *Johnson* initially recognized a new right. *Morgan* does mean that *Dimaya* and *Davis* were not new rules and thus did not restart the habeas clock; only *Johnson* did. That is also consistent with my view that only the case initially recognizing a right restarts the clock, which results in the prompt presentation of these claims. Because I read *Morgan* to support the timeliness of London's petition, I view *Williams* as the case that requires its dismissal.

issue from ever pursuing it. *See Brown v. United States*, 139 S. Ct. 14, 15 (2018) (Sotomayor, J., dissenting).

But on the whole, applying section 2255(f)(3) as written to require asserting a right when it is in "initially recognized by the Supreme Court" results in a pro-promptness statute more than a pro-prisoner one. Indeed, it would mean that this summer's *Davis* ruling from the Supreme Court would not unleash another round of section 2255 motions from those sentenced before *Johnson*. Those prisoners would have had to file their claims more than three years ago. *See, e.g., Thomas v. United States*, 2018 WL 3999709, at *3 (E.D. Va. Aug. 21, 2018) (holding that a vagueness challenge to 18 U.S.C. 924(c)—the statute addressed this year in *Davis*——was too late because it should have been brought within a year of *Johnson* rather than within a year of *Dimaya*). The confusion that instead reigns in this area means a prisoner is at risk of the same claim being dismissed as too early and then too late, with no in-between period when it would be timely. *Compare id.*, *with United States v. Brown*, 868 F.3d 297, 303 (4th Cir. 2017) (dismissing claim asserting *Johnson* in attempt to invalidate the career offender Guideline).

The rule Congress chose—that the one-year clock restarts when the Supreme Court initially recognizes the right the prisoner asserts—eliminates these problems. But at a minimum, an issue that has divided so many judges within and among circuits,[4] and that affects so many prisoners, "calls out for an answer." *Brown*, 139 S. Ct. at 14 (Sotomayor, J., dissenting).

---

[4] *Compare United States v. Blackstone*, 903 F.3d 1020 (9th Cir. 2018) (holding London's motion would be untimely); *Russo v. United States*, 902 F.3d 880 (8th Cir. 2018) (same); *United States v. Green*, 898 F.3d 315 (3d Cir. 2018) (same); *United States v. Greer*, 881 F.3d 1241 (10th Cir. 2018) (same); *Brown*, 868 F.3d 297 (same); *Raybon*, 867 F.3d 625 (same), *with Moore*, 871 F.3d at 82 (suggesting London's motion should be timely); *Cross*, 892 F.3d at 293–94 (holding the same); *Chambers v. United States*, 763 F. App'x 514, 519 (6th Cir. 2019) (Moore, J. concurring) (concluding a motion like London's should be timely);

No. 17-30675

_Hodges v. United States_, 2019 WL 3384841, at *1 (9th Cir. Jul. 26, 2019) (Berzon, J. concurring) (same); _Brown_, 868 F.3d at 304 (Gregory, C.J., dissenting) (same).