# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 7, 2021            Decided July 13, 2021

No. 19-3086

UNITED STATES OF AMERICA,
APPELLEE

v.

DERREK E. ARRINGTON,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:00-cr-00159-1)

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Tony Axam Jr.*, Assistant Federal Public Defender, entered an appearance.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Elizabeth Trosman*, Assistant U.S. Attorney at the time the brief was filed, and *John P. Mannarino*, Assistant U.S. Attorney.

Before: ROGERS, TATEL, and WALKER, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* TATEL.

Dissenting opinion filed by *Circuit Judge* WALKER.

TATEL, *Circuit Judge*: Under the Antiterrorism and Effective Death Penalty Act (AEDPA), an otherwise untimely habeas petition is timely if it is filed within a year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). In this case, a habeas petitioner argues that the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015), which struck down the Armed Career Criminal Act's "residual clause" as unconstitutionally vague, invalidates his sentence because his sentencing judge arrived at it in reliance on an identical "residual clause" contained in the U.S. Sentencing Guidelines. The question presented here is whether the "right asserted" by the petitioner was, as he argues, "initially recognized by the Supreme Court" in *Johnson*. Because it was, we reverse the district court's decision denying the petition as untimely.

**I.**

On September 18, 2000, a federal jury convicted Derrek Arrington of assaulting a federal officer with a dangerous weapon in violation of 18 U.S.C. § 111(a) and (b), and of unlawfully possessing a firearm as a convicted felon in violation of 18 U.S.C. § 922(g). Applying the U.S. Sentencing Guidelines, the judge calculated a 210- to 262-month sentencing range, which became 210 to 240 months because of the 10-year statutory maximum on each count. Because the judge sentenced Arrington before the Supreme Court rendered the Sentencing Guidelines advisory in *United States v. Booker*, 543 U.S. 220 (2005), that range was mandatory. The judge then sentenced Arrington to 240 months in prison.

Arrington faced a heightened sentencing range because of two Guidelines provisions. (Since Arrington was sentenced under the 2000 version of the Guidelines, our citations and discussion refer exclusively to that edition.) The first provision, section 2K2.1(a), applies a higher base offense level for the unlawful possession of a firearm "if the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). The second, section 4B1.1, classifies a defendant as "a career offender" and applies a sentencing enhancement if, among other things, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. Both provisions refer to a "crime of violence," which the operative version of the Guidelines defined as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a). That last portion—"or otherwise involves conduct that presents a serious potential risk of physical injury to another"—is known as the definition's "residual clause." The sentencing judge found that Arrington qualified as a "career offender" under section 4B1.1 and that Arrington's unlawful possession count qualified for an enhanced base offense level under section 2K2.1(a)(2) because Arrington had at least two prior robbery convictions that qualified as "crimes of violence." We affirmed on direct appeal. *United States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002).

In December 2003, Arrington filed a *pro se* motion for post-conviction relief under 28 U.S.C. § 2255, which the

district court denied in April 2007. We then denied his application for a certificate of appealability.

Arrington's present petition follows several intervening legal developments central to the issue before us. As already mentioned, the Supreme Court in *Booker* rendered the Sentencing Guidelines advisory while Arrington's first petition was still pending. *Booker*, 543 U.S. at 245. Then, on June 26, 2015, the Court held in *Johnson* that the constitutional "prohibition of vagueness in criminal statutes" applies "to statutes fixing sentences" and that the Armed Career Criminal Act of 1984's (ACCA) "residual clause" was unconstitutionally vague. *Johnson*, 576 U.S. at 595–97. Under the ACCA, "a defendant convicted of being a felon in possession of a firearm faces more severe punishment if he has three or more previous convictions for a 'violent felony,' a term defined" in the ACCA's so-called residual clause, just as in the Sentencing Guidelines, "to include any felony that 'involves conduct that presents a serious potential risk of physical injury to another.'" *Id*. at 593 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). Finally, shortly after deciding *Johnson*, the Supreme Court held that "*Johnson* announced a substantive rule that has retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016).

On April 27, 2016, just days after that retroactivity decision and within a year of *Johnson*, Arrington filed a petition with our court for leave to file an attached successive section 2255 motion challenging his sentencing enhancements in light of *Johnson*. Shortly thereafter, a motions panel authorized him to file his petition. Arrington then filed a supplemental motion in May 2017 and, a little over two years later, the district court denied his motion as untimely. *United States v. Arrington*, No. 1:00-CR-00159 (RCL), 2019 WL 4644381 (D.D.C. Sept. 24, 2019). Arrington now appeals.

**II.**

Under AEDPA, a federal prisoner may petition a district court to vacate, set aside, or correct his sentence on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, . . . or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Section 2255(f) imposes a timeliness requirement on such a petition: "A 1-year period of limitation shall apply to a motion under this section." *Id.* § 2255(f). "The limitation period shall run from the latest of" several events, including, as relevant here, "the date on which the judgment of conviction becomes final," *id.* § 2255(f)(1), or "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," *id.* § 2255(f)(3). A renewed limitations period under the latter provision, section 2255(f)(3), begins when the Court declares a new right, not when it deems the right retroactive. *See Dodd v. United States*, 545 U.S. 353, 356–60 (2005).

Arrington's petition is timely if, as he argues, section 2255(f)(3) applies, since then the statute of limitations would have begun running when the Supreme Court decided *Johnson* less than a year before Arrington filed his petition. But if section 2255(f)(3) does not apply, then Arrington's petition is untimely, since his limitation period would have begun to run when his conviction became final in 2003. *See Arrington v. United States*, 537 U.S. 1241 (2003) (denying petition for a writ of certiorari on direct review); *Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). Whether Arrington's motion is timely under section 2255(f)(3) is a question of law we review

de novo. *United States v. Scurry*, 992 F.3d 1060, 1065 (D.C. Cir. 2021).

Determining whether section 2255(f)(3) applies requires us to answer two related questions, both prompted by that section's text. First, what "right" did the Supreme Court "recognize" in *Johnson*? And second, does Arrington "assert" that right here?

In *Johnson*, the Supreme Court considered whether the ACCA's residual clause—identical to the clause appearing in the Guidelines—could "survive[] the Constitution's prohibition of vague criminal laws." 576 U.S. at 593. Holding that it could not, the Court explained that the residual clause violated the Fifth Amendment's requirement that "statutes fixing sentences" must "give ordinary people fair notice of the conduct [they] punish[]" and must not be "so standardless that [they] invite[] arbitrary enforcement." *Id.* at 595–96. Because the ACCA's residual clause asked whether the crime "involves conduct" presenting too much risk of physical injury, rather than whether it has "as an element the use" of force, it "require[d] courts to . . . picture the kind of conduct that the crime involves in the ordinary case, and . . . judge whether that abstraction presents a serious potential risk of physical injury." *Id.* at 596 (internal quotation marks omitted). By tying "the judicial assessment of risk to a judicially imagined 'ordinary case,'" that approach left both "grave uncertainty about how to estimate the risk posed by a crime" and "about how much risk it takes for a crime to qualify as a violent felony." *Id.* at 597–98. "By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produce[d] more unpredictability and arbitrariness than the Due Process Clause tolerates." *Id.* at 598.

The Supreme Court examined *Johnson*'s consequences in two later cases. First, in *Beckles v. United States*, 137 S. Ct. 886 (2017), the Court held that the post-*Booker advisory* Sentencing Guidelines' residual clause—the same language at issue in this case—was not unconstitutionally vague under the principles announced in *Johnson*. The Court explained that "the [advisory] Guidelines are not amenable to a vagueness challenge" because "they merely guide the district courts' discretion." *Id.* at 894. Unlike the ACCA, the Court emphasized, the advisory Guidelines "do not fix the permissible range of sentences" and instead "merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range." *Id.* at 892. Significantly for our purposes, the case before us is virtually identical to *Beckles*, but with one important distinction: Arrington was sentenced under the mandatory, rather than advisory, Sentencing Guidelines.

Second, in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), the Court held that the residual clause in 18 U.S.C. § 16(b), which "provides the federal criminal code's definition of 'crime of violence,'" was void for vagueness. *Id.* at 1210–11. Section 16(b)'s definition of a crime of violence is similar, but not identical, to that of the ACCA and Guidelines. *See* 18 U.S.C. § 16(b) (defining a "crime of violence" to include "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). The Court concluded that section 16(b) was unconstitutionally vague because it had "the same '[t]wo features' that 'conspire[d] to make [ACCA's residual clause] unconstitutionally vague.'" *Dimaya*, 138 S. Ct. at 1216 (alterations in original) (quoting *Johnson*, 576 U.S. at 597). "It too 'require[d] a court to picture the kind of conduct that the crime involves in "the ordinary case," and to judge whether that

abstraction present[ed]' some not-well-specified-yet-sufficiently-large degree of risk." *Id.* (quoting *Johnson*, 576 U.S. at 596–97). The Court described the application of *Johnson* in *Dimaya* as "straightforward," and *Johnson*'s reasoning as "effectively resolv[ing] the case," as section 16(b) had "the same two features as [the ACCA], combined in the same constitutionally problematic way." *Id.* at 1213. In other words, the Court declared, "*Johnson* tells us how to resolve this case." *Id.* at 1223.

Arrington argues that, even though *Johnson* arose in the specific context of the ACCA's residual clause, the "right" *Johnson* "recognized" was, as the Seventh Circuit put it, a person's more general "'right not to have his sentence dictated by the unconstitutionally vague language'" used in that statute. Pet'r's Br. 18–19 (emphasis omitted) (quoting *Cross v. United States*, 892 F.3d 288, 294 (7th Cir. 2018)). Because Arrington "asserts precisely th[at] right" in his challenge to the mandatory Sentencing Guidelines' identical language, he contends that his petition is timely. Pet'r's Br. 20. By contrast, the government contends that "'the only right recognized by the Supreme Court in *Johnson* was a defendant's right not to have his sentence increased under the residual clause of the ACCA,'" Resp't's Br. 22 (quoting *United States v. Greer*, 881 F.3d 1241, 1248 (10th Cir. 2018)), or, as in the broader formulation the government offered at oral argument, under the residual clause of a statute, Oral Arg. Tr. 22:4–8. As the government sees it, because *Johnson* conclusively resolved only the constitutionality of the ACCA's residual clause and does not *dictate* the unconstitutionality of the mandatory Guidelines' residual clause, the "right asserted" in Arrington's petition cannot have been "initially recognized" in *Johnson*. 28 U.S.C. § 2255(f)(3).

We agree with Arrington. The description he embraces—of a right not to have one's sentence dictated by a rule of law using the residual clause's vague language—fits neatly into our ordinary sense of how courts are to extract general rights from particular cases. And it gets right the general principle recognized by *Johnson* and its progeny: that the residual clause's language requires judges to engage in an inquiry so standardless as to be unconstitutional, and that such an indeterminate approach to sentencing is unconstitutional even if, as here, it appears outside the ACCA or in modified form. That some superficially similar contexts may be distinguishable, as in *Beckles*, changes little. At most, *Beckles* should lead us to refine our description of *Johnson*'s right, just as Arrington does, so as to limit it to cases where the vague language *dictates* a defendant's sentence. Whether or not Arrington's case indeed falls within that refined articulation of the right, he has plainly "asserted" that right as the basis for his petition.

Arrington's approach finds support in section 2255(f)(3)'s language. That provision turns on what "right" the Supreme Court recognized in a prior case. It does not turn on the case's precise holding or, as AEDPA does elsewhere, the content of "clearly established Federal law." *See* 28 U.S.C. § 2254(d)(1). Though dictionaries offer countless definitions for the many uses of the word "right," all relevant definitions invariably define a "right" at a relatively high level of generality. *See, e.g.*, *Right*, Webster's Third New International Dictionary (1993) (defining a "right" as "a power or privilege vested in a person by the law to demand action or forbearance at the hands of another"); *Right*, Oxford English Dictionary (3d ed. 2010) (defining a "right" as "[a] legal, equitable, or moral title or claim to the possession of property or authority, the enjoyment or privileges or immunities, etc.," and offering as examples "freedom of speech, democracy, [and] the rule of law"); *Right*,

Black's Law Dictionary (7th ed. 1999) (defining a "right" as "[s]omething that is due to a person by just claim, legal guarantee, or moral principle" and offering as an example the "right of liberty"); *Right*, American Heritage Dictionary (2d College Ed. 1985) (defining a "right" as "[s]omething that is due to a person by law, tradition, or nature" and offering as an example the "right of free speech"); *see also Shea v. United States*, 976 F.3d 63, 73 (1st Cir. 2020) ("Congress in § 2255 used words such as 'rule' and 'right' because it recognizes that the Supreme Court guides—and indeed binds—the lower courts not just with technical holdings confined to the precise facts of each case but with general rules that are logically inherent in those holdings." (internal quotation marks omitted)). The government's argument for a narrow description of the right recognized in *Johnson* therefore faces an uphill climb—one made even more difficult given *Dimaya*'s demonstration that *Johnson* may be "straightforwardly" extended to different language contained in a different statute.

The central defect in the government's approach is this: by arguing that Arrington's petition is untimely because *Johnson* does not "mandate[] the outcome of Arrington's challenge," Resp't's Br. 30, the government collapses the timeliness and merits inquiries into one. *See Cross*, 892 F.3d at 293 ("The government's approach suffers from a fundamental flaw. It improperly reads a merits analysis into the limitations period."). But the government identifies no statutory basis for conflating whether Arrington asserts the right recognized in *Johnson* with whether that right actually controls the outcome in his case. Indeed, the government's view requires us to discount almost entirely the statute's use of the words "right" and "asserted." We have never treated section 2255(f)(3) as requiring the kind of merits-based analysis the government urges; in fact, we have expressly declined to conduct such an inquiry in a closely related context. *See In re Williams*, 759

F.3d 66, 68–70 (D.C. Cir. 2014) (declining to determine whether petitioner "rel[ied] on" a Supreme Court ruling or "instead relie[d] on an extension of" that ruling for purposes of 28 U.S.C. § 2255(h)(2), and concluding that petition was timely under section 2255(f)(3) without so determining either). In the same vein, it makes no difference whether, as the government insists, *Johnson* left open "the question whether a defendant has a right not to be sentenced under the mandatory Guidelines' residual clause." Resp't's Br. 21; *see also Beckles*, 137 S. Ct. at 903 n.4 (Sotomayor, J., concurring in the judgment) (observing that *Beckles* "leaves open the question whether defendants sentenced" before *Booker* "may mount vagueness attacks on their sentences"). In arguing that he does have such a particularized right, Arrington plainly asserts the more general right, recognized in *Johnson*, not to have his sentence dictated by the unconstitutionally vague language contained in the mandatory residual clause.

Perhaps the government's point is that in describing a right, we should craft our description narrowly enough to plainly exclude any cases where the right does not squarely dictate the result. In other words, a litigant can be said to "assert" a right only if the right in fact applies to his case. But that approach reads the word "asserted" out of section 2255(f)(3). The American Heritage Dictionary defines "asserted" to mean "[c]onfidently stated to be so but without proof; alleged." *Asserted*, The American Heritage Dictionary of the English Language (4th ed. 2000). Black's Law Dictionary defines "assert" to mean "[t]o state positively" or "[t]o invoke or enforce a legal right." *Assert*, Black's Law Dictionary (11th ed. 2019). Similarly, the Oxford English Dictionary defines "assert" to mean "[t]o maintain practically, insist upon, or vindicate a (disputed) claim to (anything)." *Assert*, Oxford English Dictionary (2d ed. 1989). And in distinguishing "assert" from related synonyms, Merriam-

Webster's notes that "assert" "may imply . . . lack of proof for the statement," *Assert*, Webster's Third New International Dictionary (1993), that it "mean[s] to state positively usu[ally] in anticipation of denial or objection," *Assert*, Merriam-Webster's Collegiate Dictionary (10th ed. 1996), and that it "implies stating confidently without need for proof or regard for evidence," *id.* Accordingly, for a motion to be timely under section 2255(f)(3), it need only "state" or "invoke" the newly recognized right, not conclusively prove that the right applies to the movant's circumstances. *See Cross*, 892 F.3d at 294 ("[Section 2255(f)(3)] does not say that the movant must ultimately *prove* that the right applies to his situation; he need only claim the benefit of a right that the Supreme Court has recently recognized. An alternative reading would require that we take the disfavored step of reading 'asserted' out of the statute."); *see also United States v. Snyder*, 871 F.3d 1122, 1126 (10th Cir. 2017) ("[I]n order to be timely under § 2255(f)(3), a § 2255 motion need only 'invoke' the newly recognized right, regardless of whether or not the facts of record ultimately support the movant's claim."). Indeed, the word "asserted" affirmatively suggests that the matter asserted may lack proof or be subject to dispute.

The government's view is also at odds with the way we ordinarily speak about rights. Suppose an individual challenges a speech restriction, but it turns out her speech was unprotected incitement. Applying section 2255's vocabulary, we could quite naturally say that she had asserted the right to free speech recognized by the First Amendment, even though she was ultimately wrong about that right's application to her case. To be sure, the "right to free speech" is broader than the right Arrington argues was recognized in *Johnson*. We use the example, however, to demonstrate a generally applicable linguistic point: "asserting" a right is an entirely different matter than proving that you can successfully claim its benefit.

Indeed, courts routinely describe litigants as "asserting" rights that, in the end, do not apply to their circumstances. *See, e.g.*, *Samuels v. McCurdy*, 267 U.S. 188, 199–200 (1925) ("[T]he petitioner does not deny that the liquor seized was within the condemnation of the law and that he has no defense to his possession of it except as he asserts a property right protected by the Fourteenth Amendment which we have found he does not have."); *United States v. Chester*, 628 F.3d 673, 682–83 (4th Cir. 2010) ("Although Chester asserts his right to possess a firearm in his home for the purpose of self-defense, we believe his claim is not within the core right identified in *Heller* . . . ."); *Yakama Indian Nation v. Washington Department of Revenue*, 176 F.3d 1241, 1247 (9th Cir. 1999) ("If [sovereign] immunity does not extend to shield the Nation from the Department's seizure and forfeiture of the Nation's unstamped cigarettes, then the federal right the nation asserts does not exist in this case and there is no federal right that requires vindication in federal court.").

Our dissenting colleague adopts a narrow reading of the right recognized in *Johnson*. He does so not because of any apparent disagreement with our textual analysis, but instead because the Supreme Court has repeatedly admonished courts against "framing [its] precedents at . . . a high level of generality" with respect to AEDPA. *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam). But as our colleague recognizes, that caution has come only in the context of defining "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)(1). On its face, that seems a rather different inquiry from the one we face here—whether a petitioner has simply asserted a right recognized by the Court—and our colleague offers no authority from this court or the Supreme Court suggesting that the two provisions should be construed alike. Indeed, the fact that Congress, in passing AEDPA, referred to "clearly established Federal law" in section

14

2254(d)(1) but spoke instead in the more general language of "rights" in section 2255(f)(3) suggests that it meant something by its differing language choices. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration omitted) (internal quotation marks omitted)). Equally significant, the Court has explained that section 2254(d)(1)'s standard is "difficult to meet" because a section 2254 habeas petition "intrudes on state sovereignty" by "frustrat[ing] both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks omitted). By contrast, a habeas court's conclusion that a *federal* prisoner may claim section 2255(f)(3)'s benefit implicates none of the federalism concerns raised by section 2254(d)(1). Accordingly, we decline to construe section 2255(f)(3) as imposing nearly as demanding a test as section 2254(d)(1).

In rejecting the interpretation of section 2255(f)(3) we adopt here, the district court sounded its concern about "the ease with which a defendant could bypass § 2255's one-year limitations period" by merely "hitch[ing] his claim for relief to a recent Supreme Court holding." *Arrington*, 2019 WL 4644381, at *4. We take seriously that concern, but "[o]ur charge is to give effect to the law Congress enacted." *Lewis v. City of Chicago*, 560 U.S. 205, 217 (2010). If the statute Congress enacted allows a petition like Arrington's to proceed as timely, and "that effect was unintended, it is a problem for Congress, not one that federal courts can fix." *Id.* Moreover, any danger that petitioners will too easily force courts to skip past the statute of limitations and consider the merits is hardly resolved by importing that very merits analysis into the

timeliness inquiry. In any event, district courts are free to summarily dismiss entirely groundless petitions on the merits, even if such petitions do—perhaps mistakenly or disingenuously—assert a recently recognized right. *See United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996) ("A judge need not conduct an evidentiary hearing before denying a petition for relief under § 2255 when the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . . [I]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal." (internal quotation marks omitted)).

Given the foregoing, we are persuaded that Arrington's petition satisfies section 2255(f)(3). *Johnson* recognized a person's right not to have his sentence dictated by the unconstitutionally vague language contained in the mandatory residual clause, and Arrington asserts that right here. Whether Arrington is correct that the right renders his sentence unconstitutional, and whether *Johnson* dictates that outcome, are separate questions irrelevant to the timeliness inquiry. Nor need we consider whether, on our interpretation, "asserting" a right might still require a petitioner to draw some minimum, rational connection between his claim and the right he asserts; the issue is unbriefed and Arrington's petition plainly states at least a plausible case for applying *Johnson*.

We recognize that in reaching our conclusion, we are departing from the approach taken by several of our sister circuits. *See Raybon v. United States*, 867 F.3d 625 (6th Cir. 2017); *United States v. Brown*, 868 F.3d 297 (4th Cir. 2017); *Greer*, 881 F.3d 1241; *United States v. Green*, 898 F.3d 315 (3d Cir. 2018); *Russo v. United States*, 902 F.3d 880 (8th Cir. 2018); *United States v. Blackstone*, 903 F.3d 1020 (9th Cir.

2018); *United States v. London*, 937 F.3d 502 (5th Cir. 2019); *Nunez v. United States*, 954 F.3d 465 (2d Cir. 2020); *see also Shea*, 976 F.3d at 71 (concluding that "*Johnson* establishes beyond reasonable debate that the pre-*Booker* Guidelines' residual clause was too vague to constitutionally enhance a defendant's sentence"); *but see Cross*, 892 F.3d at 293–94. But those courts have, with some exceptions, largely elided the key interpretive questions we address today: the level of generality at which we should understand the right recognized in *Johnson*, and what exactly section 2255 requires of a petitioner to "assert" such a right. In any event, "[i]t is hardly unusual for . . . this court of appeals[] to disagree with [its] sister circuits." *Holland v. Williams Mountain Coal Co.*, 496 F.3d 670, 674 (D.C. Cir. 2007).

Because the district court concluded that Arrington's petition was untimely, it never considered whether his petition was otherwise procedurally barred or whether it could succeed on the merits. Though the government urges us to address those matters in the first instance, we decline that invitation. *See Capitol Services Management, Inc. v. Vesta Corporation*, 933 F.3d 784, 789 (D.C. Cir. 2019) ("As an appellate court, we are a court of review, not of first view." (cleaned up)).

## III.

For the foregoing reasons, we reverse the district court's order denying Arrington's section 2255 motion as untimely and remand for further proceedings consistent with this opinion.

*So ordered.*

WALKER, *Circuit Judge*, dissenting:

In *Johnson v. United States* the Supreme Court held that the violent-felony residual clause of the Armed Career Criminal Act is unconstitutionally vague.[1] According to Derrek Arrington, *Johnson* recognized a right that invalidates the crime-of-violence residual clause of the mandatory Sentencing Guidelines. If it did, his otherwise untimely § 2255 motion for post-conviction relief is timely. But because it did not, his motion should be dismissed.

I

"In April 2000, Derrek Arrington dragged one U.S. Park policeman through an intersection with his automobile and shot another in the face at close range, permanently disfiguring him."[2] A federal jury convicted him of assaulting, resisting, or impeding a federal officer with a dangerous weapon (his car) and unlawful possession of a firearm by a convicted felon.[3] At sentencing — before *United States v. Booker* made the United States Sentencing Guidelines advisory[4] — the district court found that Arrington had two prior convictions for a "crime of violence" as defined by the residual clause of the then-mandatory Sentencing Guidelines.[5]

Absent that finding, Arrington's Sentencing Guidelines range would have run from 14 years to 17.5 years. Instead, his Sentencing Guidelines range started at 17.5 years and continued until capped by the combined statutory maximum of 20 years.

---

[1] 576 U.S. 591, 597 (2015).
[2] *United States v. Arrington*, No. 1:00-cr-159, July 9, 2009 Memorandum Order, DN 125 at pg. 1.
[3] *Id.*
[4] 543 U.S. 220, 245 (2005).
[5] United States Sentencing Guidelines § 4B1.2(a)(2).

In 2001, the district court sentenced Arrington to 20 years in prison. This court affirmed Arrington's conviction and sentence.[6]

After Arrington's judgment became final, he attempted to relitigate his case. In 2003, he filed his first 28 U.S.C. § 2255 motion for post-conviction relief.[7] In 2005, he petitioned this court for mandamus relief.[8] In 2007, he moved to alter or amend the denial of his § 2255 motion and alternatively to amend his § 2255 motion.[9] In 2008, he appealed the district court's dismissal of his § 2255 motion and his 2007 motion.[10] In 2009, he moved to correct an allegedly illegal sentence,[11] moved for a writ of audita querela,[12] moved to reopen his previous § 2255 motion,[13] and appealed the district court's denial of his writ of audita querela.[14] In 2010, he moved for a reduction of his sentence.[15] In 2011, he appealed the denial of that motion[16] and filed four motions to attack his original judgment.[17] In 2012, he moved to review his sentence,[18]

---

[6] *See United States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002), *cert. denied*, 537 U.S. 1241 (2003).

[7] Motion denied. *See United States v. Arrington*, No. 1:00-cr-159, DN 110.

[8] Petition denied. *See id.* at DN 102.

[9] Motion denied. *See id.* at DN 114.

[10] Appeal dismissed for lack of a certificate of appealability. *See id.* at DN 120.

[11] Motion denied. *See id.* at DN 122.

[12] Motion denied. *See id.* at DN 125.

[13] Motion denied. *See id.* at July 16, 2009 Minute Order.

[14] Denial affirmed. *See id.* at DN 130.

[15] Motion denied. *See id.* at DN 132.

[16] Appeal dismissed upon Appellant's motion to withdraw. *See id.* at DN 136.

[17] Motions denied. *See id.* at DN 138; DN 144; DN 166.

[18] Motion denied. *See id.* at DN 166.

petitioned this court for mandamus relief,[19] and later appealed the district court's denials of his 2011 motions.[20]

That brings us to Arrington's latest § 2255 motion.

In 2015, in *Johnson v. United States*, the Supreme Court struck down the violent-felony residual clause of the Armed Career Criminal Act as unconstitutionally vague.[21] The Court later declared *Johnson* retroactively applicable.[22]

Within a year of *Johnson*, Arrington petitioned to file a successive § 2255 motion — his 18th of the post-conviction petitions, motions, and appeals listed above. Citing § 2255(f)(3) — which requires a movant to "assert[]" a right "newly recognized by the Supreme Court" — he argued *Johnson* made possible a § 2255 motion that would otherwise be time barred.[23]

This court granted Arrington's petition without deciding whether he could satisfy the requirements of § 2255(f)(3).[24] He

---

[19] Petition denied. *See id.* at DN 167.

[20] Appeal dismissed as to the Rule 60(b) motion and denial of the Rule 36 motion affirmed. *See id.* at DN 172.

[21] 576 U.S. 591, 597.

[22] *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).

[23] 28 U.S.C. § 2255(f)(3) (a movant may file a § 2255 motion within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review").

[24] *In re Derrek Arrington*, No. 16-3020, June 15, 2016 Per Curiam Order (certifying that Arrington made the "prima facie showing" required for filing in the district court); *cf. In re Williams*, 759 F.3d 66, 70 (D.C. Cir. 2014) ("our inquiry is limited to whether Williams'

subsequently filed his successive § 2255 motion in district court, asserting that the crime-of-violence residual clause of the mandatory Sentencing Guidelines is unconstitutionally vague because it is identically worded to the residual clause *Johnson* struck down.

After Arrington filed his successive § 2255 motion, but before the district court ruled on it, the Supreme Court decided *Beckles v. United States*.[25] It clarified the limited scope of *Johnson*'s invalidation of the Armed Career Criminal Act's violent-felony residual clause by holding that "the advisory Guidelines are not subject to vagueness challenges under the Due Process Clause."[26]

*Beckles* reasoned that the advisory Sentencing Guidelines "do not regulate the public."[27] Instead, they "advise sentencing courts how to exercise their discretion within the bounds established by Congress."[28] Moreover, our current "system of guided discretion" cannot be unconstitutionally vague because the pre-Guidelines "system of unfettered discretion" was not unconstitutionally vague.[29] That "system of unfettered discretion" was (a) undoubtedly constitutional and (b) far vaguer than even the vaguest Guidelines.[30]

After "the *Beckles* Court made clear that the right announced in *Johnson* did not automatically apply to all

---

motion has made a *prima facie* case"); *United States v. Brown*, 868 F.3d 297, 303-04 (4th Cir. 2017).

[25] 137 S. Ct. 886 (2017).

[26] *Id.* at 890.

[27] *Id.* at 895.

[28] *Id.*

[29] *Id.* at 894.

[30] *Id.*

similarly worded residual clauses,"[31] the district court dismissed as untimely Arrington's successive § 2255 motion.[32] The district court explained that *Johnson* had not "'recognized'" "'the right asserted'" by Arrington not to have his sentence fixed by an unconstitutionally vague residual clause.[33]

Arrington appealed. We have jurisdiction, and our review is de novo.[34]

## II

In passing the Antiterrorism and Effective Death Penalty Act of 1996,[35] "Congress imposed for the first time a fixed time limit for collateral attacks in federal court on a judgment of conviction."[36] Under AEDPA, a one-year statute of limitations for § 2255 motions runs from the latest of four possible dates.[37] That date is usually "the date on which the judgment of conviction becomes final," which for Arrington was two decades ago.[38]

---

[31] *Brown*, 868 F.3d at 302.

[32] *United States v. Arrington*, No. 1:00-cr-159, 2019 WL 4644381, at *4 (D.D.C. Sept. 24, 2019).

[33] *Id.* at *10 (quoting 28 U.S.C. § 2255(f)(3)).

[34] 28 U.S.C. § 2253; *United States v. Palmer*, 296 F.3d 1135, 1141 (D.C. Cir. 2002).

[35] Pub. L. No. 104-132, 110 Stat. 1214.

[36] *Mayle v. Felix*, 545 U.S. 644, 654 (2005).

[37] Pub. L. No. 104-132, 110 Stat. 1214, 1220 (codified at 28 U.S.C. § 2255).

[38] 28 U.S.C. § 2255(f)(1). A conviction becomes final when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003).

Arrington claims a later date applies. Under § 2255(f)(3), if a movant asserts a right newly recognized by the Supreme Court, his one-year deadline runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."[39]

Like other provisions of AEDPA, § 2255(f)(3) ties judges' hands. It forbids relief that requires expanding existing Supreme Court precedent. It thereby precludes the kind of legal reasoning judges otherwise do every day.[40]

Since AEDPA's enactment, the Supreme Court has frequently — and often summarily — reversed circuit courts that stray from the lane AEDPA assigns them.[41] It has warned

---

[39] More specifically, the timer starts on the day the Supreme Court initially recognizes the right asserted. *See Dodd v. United States*, 545 U.S. 353, 357 (2005).

[40] *See United States v. Blackstone*, 903 F.3d 1020, 1026 (9th Cir. 2018) ("We are regularly called upon to apply and extend Supreme Court holdings to different contexts, of course, but AEDPA expressly limits our ability to do that here."); *see also United States v. Greer*, 881 F.3d 1241, 1247 (10th Cir. 2018) ("While circuit courts can apply the *reasoning* of *Johnson* to support a finding that the residual clause of similarly worded statutes are unconstitutionally vague on direct appeal, our review under AEDPA is more limited. AEDPA limits federal habeas relief to new constitutional rights recognized by the *Supreme Court*.").

[41] *See, e.g.*, *Shoop v. Hill*, 139 S. Ct. 504 (2019) (summary reversal); *Virginia v. LeBlanc*, 137 S. Ct. 1726 (2017) (summary reversal); *Kernan v. Cuero*, 138 S. Ct. 4 (2017) (summary reversal); *Dunn v. Madison*, 138 S. Ct. 9 (2017) (summary reversal); *Woods v. Donald*, 575 U.S. 312 (2015) (summary reversal); *White v. Woodall*, 572 U.S. 415 (2014); *Lopez v. Smith*, 574 U.S. 1 (2014) (summary reversal);

courts — over and over again — "not to advance on [their] own in determining what rights have been recognized by the Supreme Court under AEDPA."[42] It specifically "has admonished lower courts 'against framing [its] precedents at . . . a high level of generality' in reviewing claims under the Antiterrorism and Effective Death Penalty Act."[43]

To be sure, as a general matter, the Supreme Court's AEDPA reversals often concern § 2254(d)(1), rather than § 2255(f)(3).[44] Section 2254(d)(1) precludes federal relief for

---

*Glebe v. Frost*, 574 U.S. 21 (2014) (summary reversal); *Metrish v. Lancaster*, 569 U.S. 351 (2013); *Nevada v. Jackson*, 569 U.S. 505 (2013) (summary reversal); *Howes v. Fields*, 565 U.S. 499 (2012); *Parker v. Matthews*, 567 U.S. 37 (2012) (summary reversal); *Premo v. Moore*, 562 U.S. 115 (2011); *Cullen v. Pinholster*, 563 U.S. 170 (2011); *Bobby v. Mitts*, 563 U.S. 395 (2011) (summary reversal); *Hardy v. Cross*, 565 U.S. 65 (2011) (summary reversal); *Berghuis v. Smith*, 559 U.S. 314 (2010); *Renico v. Lett*, 559 U.S. 766 (2010); *Waddington v. Sarausad*, 555 U.S. 179 (2009); *Knowles v. Mirzayance*, 556 U.S. 111 (2009); *Schriro v. Landrigan*, 550 U.S. 465 (2007); *Uttecht v. Brown*, 551 U.S. 1 (2007); *Schriro v. Landrigan*, 550 U.S. 465 (2007); *Carey v. Musladin*, 549 U.S. 70 (2006); *Brown v. Payton*, 544 U.S. 133 (2005); *Yarborough v. Alvarado*, 541 U.S. 652 (2004); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (summary reversal); *Early v. Packer*, 537 U.S. 3 (2002) (summary reversal).

[42] *Blackstone*, 903 F.3d at 1026 (citing *Lopez v. Smith*, 574 U.S. 1, 6 (2014)); *see also Recent Case: Criminal Law – Federal Habeas Review Under AEDPA – Sixth Circuit Interprets "Clearly Established Federal Law" Narrowly*, 126 HARV. L. REV. 860, 867 (2013) ("the Supreme Court's aggressively enforced AEDPA message" is "defer, or prepare to be reversed").

[43] *Nunez v. United States*, 954 F.3d 465, 469 (2nd Cir. 2020) (quoting *Lopez v. Smith*, 574 U.S. 1, 4, 6 (2014) (internal quotation marks and citation omitted); *Nevada v. Jackson*, 569 U.S. 505, 512 (2013)).

[44] *See* note 41.

state prisoners unless they attack a state-court "decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[45]  But even though § 2254(d)(1) is not a time bar like § 2255(f)(3), the latter "requires courts to consider whether the right a petitioner asserts has been recognized by the Supreme Court as part and parcel of deciding whether a petition is timely."[46]

In that way, the two provisions include similar inquiries. There is at most a modest distinction between **"clearly established Federal law, as determined by the Supreme Court"** (§ 2254(d)(1)) and a **"right . . . newly recognized by the Supreme Court"** (§ 2255(f)(3)).[47]  Because the Supreme Court's word is final, it has "recognized" a right when — and perhaps only when — it has "clearly established" a right.[48]

As for "recognize," it means "(1) 'to acknowledge it formally' or (2) 'to acknowledge or take notice of [it] in some definite way.'  Thus, a Supreme Court case has 'recognized' an

---

[45] 28 U.S.C. § 2254(d)(1).

[46] *Nunez*, 954 F.3d at 471.

[47] Section 2254(d)(1) has two somewhat separate inquiries: whether a state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court" and whether a state court decision "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court." Because the Supreme Court has admonished lower courts against advancing on their own in "contrary to" cases, not just "unreasonable application" cases, those admonishments are germane to § 2254(f)(3)'s inquiry, even if § 2255(f)(3) is more like the first of § 2254(d)(1)'s inquiries than its second.

[48] *See Williams v. Taylor*, 529 U.S. 362, 412 (2000) ("'clearly established Federal law, as determined by [the Supreme] Court'" means the Supreme Court's "holdings, as opposed to [] dicta").

asserted right within the meaning of § 2255(f)(3) if it has formally acknowledged that right in a definite way."[49] So "if the existence of a right remains an open question as a matter of Supreme Court precedent, then the Supreme Court has not 'recognized' that right."[50]

## III

Arrington's successive § 2255 motion should be dismissed because *Johnson* did not recognize the right he asserts. At most, *Johnson* recognized a right that is useless to Arrington — a right not to be sentenced under *statutes* with residual clauses phrased like the Armed Career Criminal Act's.[51] In contrast, *Johnson* left as an open question the only

---

[49] *United States v. Brown*, 868 F.3d 297, 301 (4th Cir. 2017) (quoting *Recognize*, Merriam-Webster Tenth Collegiate Dictionary 976 (1996)).

[50] *Id.* (citing *Tyler v. Cain*, 533 U.S. 656, 662-64 (2001)); *see also Raybon v. United States*, 867 F.3d 625, 630 (6th Cir. 2017) ("Because it is an open question, it is *not* a 'right' that 'has been newly recognized by the Supreme Court' let alone one that was 'made retroactively applicable to cases on collateral review.'") (citing § 2255(f)(3); *Tyler v. Cain*, 533 U.S. 656, 663-64 (2001), as "holding that 'made' means 'held' under identical language in § 2244(b)(2)(A) and that it must be held retroactive by the Supreme Court.").

[51] *See United States v. Green*, 898 F.3d 315, 321 (3rd Cir. 2018) ("The Supreme Court in Johnson recognized a right to not be sentenced under a <u>statute</u> that 'fixed—in an impermissibly vague way—a higher range of sentences for certain defendants.'") (quoting *Beckles v. United States,* 137 S. Ct. 886, 892 (2017)).

Arguably, because "*Johnson* by its own terms addresses only the ACCA," it recognized an even narrower right — a right "specific to the residual clause of the ACCA." *Nunez v. United States*, 954 F.3d

right Arrington can assert to obtain post-conviction relief — a purported right not to be sentenced under the allegedly unconstitutional crime-of-violence residual clause of the mandatory Sentencing Guidelines.[52]

For starters, *Johnson* does not discuss the crime-of-violence residual clause of the mandatory Sentencing Guidelines. In fact, it does not mention the Sentencing Guidelines at all.[53] "Instead, the Court's decisions up until this point evince a distinction between statutes that fix sentences and Guidelines that attempt to constrain the discretion of sentencing judges."[54]

That distinction was dispositive in *Beckles v. United States*.[55] Before *Beckles*, many courts thought *Johnson*'s reasoning might extend to the advisory Sentencing

---

465, 470 (2nd Cir. 2020); *id.* ("the Court has considered challenges to identical residual clauses in other statutes piecemeal") (citing *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018); *United States v. Davis*, 139 S. Ct. 2319 (2019)); *see also United States v. Greer*, 881 F.3d 1241, 1248 (10th Cir. 2018) ("the only right recognized by the Supreme Court in *Johnson* was a defendant's right not to have his sentence increased under the residual clause of the ACCA"). But here we need not decide whether *Johnson*'s holding is that narrow, and I express no opinion on it.

[52] United States Sentencing Guidelines § 4B1.2(a)(2).

[53] *See United States v. Brown*, 868 F.3d 297, 302 (4th Cir. 2017) ("*Johnson* did not discuss the mandatory Sentencing Guidelines' residual clause at issue here or residual clauses in other versions of the Sentencing Guidelines."); *United States v. Blackstone*, 903 F.3d 1020, 1026 (9th Cir. 2018) ("Neither *Johnson* nor *Welch* mentioned the mandatory or advisory Sentencing Guidelines.").

[54] *United States v. London*, 937 F.3d 502, 507 (5th Cir. 2019).

[55] 137 S. Ct. 886 (2017).

Guidelines.[56]  But *Beckles* clarified that *Johnson* was far more limited.[57]  Neither *Johnson* nor any other Supreme Court precedent recognizes "a broad right invalidating all residual clauses as void for vagueness simply because they exhibit wording similar to ACCA's residual clause."[58]  In the context of the mandatory Sentencing Guidelines, that right "remains an open question."[59]

Otherwise, *Beckles* would not have "explicitly and repeatedly stated that the Court was not addressing the pre-*Booker*, mandatory Guidelines scheme."[60]  It would not have "carefully crafted its holding to avoid deciding whether the logic of *Johnson* applied outside the context of ACCA."[61]  And Justice Sotomayor would not have said *Beckles* "leaves open the question whether defendants sentenced to terms of

---

[56] Ten circuit courts held it, assumed it, or accepted the Department of Justice's concession of it.  *See United States v. Fields*, 823 F.3d 20, 33 (1st Cir. 2016); *United States v. Maldonado*, 636 F. App'x 807, 810 (2nd Cir. 2016); *United States v. Townsend*, 638 F. App'x 172, 177-78 (3rd Cir. 2015); *United States v. Frazier*, 621 F. App'x 166, 168 (4th Cir. 2015); *United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016); *Ramirez v. United States*, 799 F.3d 845, 856 (7th Cir. 2015); *United States v. Martinez*, 821 F.3d 984, 988 (8th Cir. 2016); *United States v. Benavides*, 617 F. App'x 790 (9th Cir. 2015); *United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015); *United States v. Sheffield*, 832 F.3d 296, 313 (D.C. Cir. 2016).  Two did not. *See In re Arnick*, 826 F.3d 787, 788 (5th Cir. 2016) (opposite); *United States v. Matchett*, 802 F.3d 1185, 1194-95 (11th Cir. 2015) (same).
[57] *Beckles*, 137 S. Ct. at 894-95.
[58] *Brown*, 868 F.3d at 302.
[59] *Green*, 898 F.3d at 321.
[60] *Raybon v. United States*, 867 F.3d 625, 629 (6th Cir. 2017).
[61] *Brown*, 868 F.3d at 302.

imprisonment before our decision in *United States v. Booker . . .* may mount vagueness attacks on their sentences."[62]

The reasoning of *Beckles* has led at least one circuit court to conclude that the mandatory Sentencing Guidelines "cannot be unconstitutionally vague because they do not establish the illegality of any conduct."[63] On the other hand, that question is reasonably debatable. Absent the constraints of AEDPA, a different court might disagree.[64] But that would be an *extension* of *Johnson*. It is not *dictated* by *Johnson*.

That difference decides this case. Section 2255(f)(3) allows Arrington's motion only if "the right asserted" by Arrington is "that right" which *Johnson* "recognized."[65] It thereby requires Arrington to assert a right whose existence is dictated by *Johnson*. It cannot be foreclosed. Nor can it even be an open question.

Arrington cannot escape § 2255(f)(3)'s requirements by reading into *Johnson* a less specific right that might be broad enough to cover the mandatory Sentencing Guidelines. We are not at liberty to frame *Johnson*'s right at "a high level of generality."[66] In the AEDPA context, the Supreme Court

---

[62] *Beckles*, 137 S. Ct. at 903 n.4 (2017) (Sotomayor, J., concurring in the judgment).

[63] *In re Griffin*, 823 F.3d 1350, 1354 (11th Cir. 2016).

[64] *Cf. Shea v. United States*, 976 F.3d 63, 80 (1st Cir. 2020) (the residual clause of the mandatory Sentencing Guidelines is unconstitutionally vague).

[65] *See Nunez*, 954 F.3d at 471 (rejecting argument "that a defendant moving for Section 2255 relief may assert *any* right suggested by the Supreme Court within the past year for his motion to qualify as timely").

[66] *Lopez v. Smith*, 574 U.S. 1, 6 (2014) (cleaned up).

requires "identification of precedent related to 'the specific question presented by the case.'"[67]

* * *

Arrington's § 2255 motion is untimely unless the Supreme Court recognized the right he asserts. As nine circuit courts have held, it did not.[68]

Perhaps that result is unfair.[69] Perhaps not.[70] But AEDPA balances fairness with finality.[71]

I respectfully dissent.

---

[67] *Nunez,* 954 F.3d at 469 (quoting *Lopez*, 574 U.S. at 6) (cleaned up).

[68] *Compare Nunez v. United States*, 954 F.3d 465 (2nd Cir. 2020), *United States v. Green*, 898 F.3d 315 (3rd Cir. 2018), *United States v. Brown*, 868 F.3d 297 (4th Cir. 2017), *United States v. London*, 937 F.3d 502 (5th Cir. 2019), *Raybon v. United States*, 867 F.3d 625 (6th Cir. 2017), *Russo v. United States*, 902 F.3d 880 (8th Cir. 2018), *United States v. Blackstone*, 903 F.3d 1020 (9th Cir. 2018), *United States v. Greer*, 881 F.3d 1241 (10th Cir. 2018), *In re Griffin* 823 F.3d 1350 (11th Cir. 2016), *with Shea v. United States*, 976 F.3d 63 (1st Cir. 2020), *Cross v. United States*, 892 F.3d 288 (7th Cir. 2018).

[69] *Nunez*, 954 F.3d at 472 (Pooler, J., writing separately) ("I agree with the legal analysis and conclusion of the majority opinion, but I write separately to emphasize the injustice our decision today creates."); *see also Brown v. United States*, 139 S. Ct. 14, 14 (2018) (Sotomayor, J., dissenting from denial of certiorari) ("Today this Court denies petitioners, and perhaps more than 1,000 like them, a chance to challenge the constitutionality of their sentences.").

[70] *Nunez*, 954 F.3d at 472 (Raggi, J., concurring) ("I write separately only to state that I do not share my concurring colleague's concern that this decision creates any 'injustice' for Nunez . . . .").

[71] *See Mayle v. Felix*, 545 U.S. 644, 662 (2005) (AEDPA "advance[s] the finality of criminal convictions").